IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| THE ESTATE OF HAROLD LEE RICHARDSON, ET AL., | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 4:17-cv-00005 |
| v. | ) ) | **MEMORANDUM OPINION** |
| LIFEPOINT HEALTHCARE, ET AL., | ) ) | By: Hon. Jackson L. Kiser |
| Defendants. | ) ) ) ) | Senior United States District Judge |

Plaintiffs Theresa Richardson and John G. Stephens, proceeding *pro se*, initiated this action on behalf of the estate of Harold Lee Richardson ("Richardson") on January 10, 2017.[1] [ECF No. 3]. Plaintiffs are alleging violations of the False Claims Act ("FCA") and unlawful discrimination under 42 U.S.C. § 1981 as well as medical malpractice and wrongful death under Virginia law. Defendants filed a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). [ECF No. 6]. The matter was fully briefed, and oral arguments were held on July 25, 2017. The matter is now ripe for a decision. For the reasons stated below, I will grant Defendants' Motion and dismiss the federal claims. Consequently, I will decline to exercise supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(c)(3).

---

[1] Richardson is Theresa Richardson's late husband and John Stephens' late step-father. Both assert they are co-administrators of Richardson's estate.

**I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY[2]**

On December 8, 2014, Richardson went to the Danville Regional Medical Center ("DRMC")[3] with a sore throat. (*Id.* at ¶ 9.) He was examined and "told he had a cold or perhaps a light flu." (*Id.*) A throat culture was taken, and he was released with antibiotics prior to receiving the results. (*Id.*) Richardson returned to DRMC on December 11, 2014, and was diagnosed with strep throat. (*Id.* at ¶ 10.) According to the Complaint,

> Mr. Richardson walked into [DRMC] with strep throat and 16 days later was "dumped" to a lesser facility, placed in a coma, transferred to [the ICU at Moses H. Cone Memorial Hospital] and removed from life support eight days later in Greensboro, North Carolina. [Twenty-four] days after walking into [DRMC] with strep throat[,] Mr. Richardson was dead.

(*Id.* at ¶ 11.)

Plaintiffs allege "multiple instances of gross medical negligence, physical abuse, and racial discrimination . . . ." (*Id.* at ¶ 6.) They claim that they were discriminated against for being Jewish in violation of 42 U.S.C. § 1981. Plaintiffs allege that "[w]hen walking away from one group of [four] personnel she spoke with[,] Mrs. Richardson heard 'what do you expect, she's a fucking Jew.'" (*Id.* at ¶ 23.) Apparently, this was the second time that Mrs. Richardson had heard a reference to "fucking Jews." (*Id.*) They further allege that Richardson's death was caused by "student doctors" who were not licensed to practice medicine. (*Id.* at ¶ 12.) When Richardson was eventually transferred from DRMC to Moses H. Cone Memorial Hospital in Greensboro, North Carolina, the Regional One EMS employees[4] that provided the transfer "were not paramedics and not qualified to transport a patient . . . ." (*Id.* at ¶ 26.) Defendants allegedly

---

[2] For purposes of a 12(b)(6) motion, all factual allegations in the Complaint are presumed to be true.

[3] In their Complaint, Plaintiffs refer to "Danville Hospital." I construe this to mean that Plaintiffs are referring to DRMC. Plaintiffs did not contest this characterization at oral arguments.

[4] Regional One EMS is a separate entity from DRMC and is not a defendant in this lawsuit.

violated the FCA when they billed Medicare, the Department of Veterans Affairs, and other, unnamed agencies for the work of unlicensed practitioners. Plaintiffs seek to "recover all sums fraudulently billed to Medicare, the [U.S. Department of Veterans Affairs], and other government agencies by [Defendants] for unlicensed medical providers." (*Id.* at ¶ 5).

The False Claims Act claim is brought on behalf of the United States. When Plaintiffs first filed this suit, it was not clear that they intended to proceed as *qui tam* plaintiffs until they filed a motion to put the Complaint under seal. (*See* Mot. to File Doc. Under Seal, Jan. 30, 2017 [ECF No. 6].) At that point, the Court issued an Order putting the *entire* case under seal in order to serve a copy of the Complaint upon the United States and provide the United States Attorney with an opportunity to intervene. (*See* Order, Jan. 31, 2017 [ECF No. 7].) The case was also stayed during this period. (*See* Order Staying Case, Feb. 14, 2017 [ECF No. 20].) The United States declined to intervene. (S*ee* Not. of Election to Decline Intervention, Mar. 30, 2017 [ECF No. 24].) Shortly thereafter, the case was unsealed, and the stay was lifted. (*See* Order, Apr. 4, 2017 [ECF No. 25].)

After the United States declined to intervene, Plaintiffs filed a motion to amend the Complaint. (Mot. to Am., Apr. 18, 2017 [ECF No. 42].) Plaintiffs stated that they had "retained Thomas C. Wagner[5] . . . to assist them in obtaining appropriate representation in this case. Plaintiffs have contacted attorneys and anticipate that they will have appropriate counsel retained and an appearance entered *in the very near future*." (*Id.* at p. 2 (emphasis added).) Plaintiffs were given fourteen days to file an amended complaint. (*See* Order, Apr. 21, 2017 [ECF No. 43].) On the fourteenth day, Plaintiffs asked for an extension. (*See* Mot. for Extension of Time, May 5, 2017 [ECF No. 44].) Plaintiffs requested a *one-year* extension. (*Id.* at p. 6.) Apparently, Plaintiffs

---

[5] Wagner is not admitted to this Court which is why he was retained for the limited purpose of helping Plaintiffs find appropriate counsel.

were in the process of hiring a team of sixteen attorneys, and this legal team would need additional time to prepare an amended complaint. (*Id.* at p. 3) Plaintiffs did not identify these attorneys, and no attorney has filed a notice of appearance. Because Plaintiffs had already told the Court that they would be ready to proceed "in the very near future," the extraordinary length of time requested, and the fact that this case had already been subject to multiple delays, the Motion to extend the deadline was denied. (*See* Order, May 9, 2017 [ECF No. 56].) Defendants were given fourteen days to respond to the original Complaint. (*Id.*)

On May 22, 2017, Defendants filed the Motion to Dismiss currently before the Court. Defendants seek dismissal on multiple grounds: (1) failure to state a claim; (2) lack of standing to bring an FCA claim; (3) failure to comply with the statute of limitations; and (4) failure to file a certification of merit as required by Va Code § 8.01-20.1. Because I will decline to exercise supplemental jurisdiction over the state claims, there is no reason to reach the statute of limitations or certification issues.

## II. STANDARD OF REVIEW

As an initial matter, *pro se* complaints are held to "'less stringent standards than the formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). District courts must give liberal interpretations to pleadings filed by *pro se* litigants but are not required to "conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

Pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must contain sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

### III. DISCUSSION

#### A. False Claims Act

Plaintiffs lack standing to bring a *qui tam* claim under the False Claims Act. Individuals have full latitude to "plead and conduct *their own cases* personally or by counsel . . . ." 28 U.S.C. § 1654 (emphasis added). Every circuit court to have considered the issue has held that *pro se* plaintiffs cannot pursue an FCA action on behalf of the United States. *See, e.g.*, *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008); *Timson v. Sampson*, 518 F.3d 870, 873–74 (11th Cir. 2008); *Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1125–27 (9th Cir. 2007); *United States ex rel. Brooks v. Lockheed Martin Corp.*, 237 F. App'x 802, 803 (4th Cir. 2007). As stated by the Ninth Circuit, "the partial assignment [that] allows the relator asserting the government's injury to satisfy the requirements of Article III standing . . . does not transform a *qui tam* action into the relator's 'own case' for purposes of § 1654." *Stoner*, 502 F.3d at 1126.

In their response, Plaintiffs fully acknowledge that they cannot bring an FCA claim without counsel. Instead, they asked the Court to reserve judgment on the issue until after oral

arguments; Plaintiffs claimed that they would be able to secure counsel by that time. They did not, so the FCA claim must be dismissed.

   B.   **Discrimination Claims**

Plaintiffs allege a violation of 42 U.S.C. § 1981, which gives all persons in the United States the equal right to "make and enforce contracts, to sue, be parties, [and] give evidence." Defendants argue that there is no contract or other relationship between Plaintiffs and Defendants that would implicate Section 1981. Plaintiffs agree and claim that they simply cited the wrong statute.[6] Instead of suing under Section 1981, Plaintiffs actually meant to allege a claim under Title VI of the Civil Rights Act of 1964 ("Title VI"). *See* 42 U.S.C § 2000d ("No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.").

Plaintiffs' dubious claims of mistake notwithstanding, I will construe this to be a motion to amend the Complaint. That motion, however, will be denied. While leave to amend should be "freely give[n] when justice so requires," Fed. R. Civ. P. 15(a)(2), a court "may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the *amendment would be futile.*" *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (emphasis added). Employers cannot be vicariously liable for the Title VI violations of their employees if the employer was not made aware of the employee's conduct. The Fourth Circuit has not explicitly decided this issue, but district courts (including this one) and other circuits have previously weighed in. *See Foster v. Michigan*, 573 F. App'x 377, 389 (6th Cir. 2014) ("[T]here is no vicarious liability under Title VI."); *Zeno v. Pine Plains*

---

[6] Defendants' argument that no contractual relationship exists between a doctor and a patient is clearly incorrect. Defendants agreed to provide a service and Plaintiffs agreed to pay for that service. It is difficult to find a more basic example of a contract. Plaintiff's position, however, makes this a moot point.

6

*Cent. Sch. Dist.*, 702 F.3d 655, 665 n. 10 (2d. Cir 2012) (holding that Title VI requires a showing of deliberate indifference on the part of the employer); *Carnell Const. Corp. v. Danville Redevelopment & Housing Auth.*, No. 4:10cv00007, 2012 WL 178341 (W.D. Va. Jan. 23, 2012) (noting that vicarious liability under Title VI requires that supervisors were aware of the discriminatory conduct); *Beckham v. Nat'l R.R. Passenger Corp.*, 569 F. Supp. 2d 542, 557 n. 19 (D. Md. 2008) (noting that other circuits have held that vicarious liability does not exist under Title VI but declining to decide the issue);

Here, Plaintiffs have not imputed any knowledge of, or participation in, any discrimination on the part of Defendants. Plaintiffs alleged that they overheard at least one unnamed nurse refer to Plaintiffs as "fucking Jews" on two occasions.[7] Plaintiffs, however, have not alleged that any supervisors or administrators were aware of these statements. Plaintiffs allege that Teresa Richardson overheard derogatory remarks, but there is no allegation that Plaintiffs ever attempted to bring this to the hospital's attention. If DRMC administrators were not aware of the alleged discrimination, then Plaintiffs cannot prevail.

Plaintiffs concede that they do not have a basis to sue under Section 1981. ("Plaintiffs mistakenly cited 42 U.S.C. [§] 1981 as the legal basis for their claim.") I will construe this to be a voluntary dismissal of the Section 1981 claim. Plaintiffs now want to amend their Complaint to insert a Title VI claim. That claim would be based on a theory of a vicarious liability, which is not provided for in Title VI. To the extent that Plaintiffs are moving to amend the Complaint, that motion will be denied because the claim is futile.

   C.   **State Law Claims**

At this point, all that would remain are Plaintiff's state claims of medical malpractice and wrongful death. This Court would not have subject matter jurisdiction over these claims absent

---

[7] It is unclear whether the two utterances were by the same person.

an accompanying federal claim. The Court may extend supplemental jurisdiction over state claims that lack an independent basis for subject matter jurisdiction, but it is not required to do so. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction [if] . . . the district court has dismissed all claims over which it has original jurisdiction."). I have previously declined to exercise supplemental jurisdiction over state claims when the litigation was in its early stages. *See Turner v. Va. Dept. of Med. Asst. Servs.*, 230 F. Supp. 3d 498, 513 (W.D. Va. 2017). The same is appropriate here, which gives Plaintiffs an opportunity to litigate their state claims in the appropriate state court.

## **VI.** **CONCLUSION**

There no denying that Plaintiffs have suffered a great loss, and they deserve a measure of sympathy. It is also no easy task to litigate in federal court without any formal legal training, but as I reminded Plaintiffs at oral arguments, this reality does not absolve me of my responsibility to follow the law even when its consequences appear harsh. The facts before me lead to the clear legal conclusion that Plaintiffs' Complaint has not adequately stated a claim as required by the applicable law and rules. These claims must be dismissed. Given that this litigation is still in its early stages, I will decline to exercise supplemental jurisdiction over the remaining state claims.

Defendants' Motion will be granted. The FCA and Section 1981 claims will be dismissed without prejudice. To the extent that Plaintiffs sought to amend their Complaint to change their Section 1981 claim to a Title VI claim, that motion will be denied. I decline to exercise

supplemental jurisdiction over the remaining state claims, and those claims will be dismissed without prejudice.

Entered this 1st day of August, 2017.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE